# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **STEPHEN DOWNS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:20-cv-1090** |
| | ) | |
| **DENIS MCDONOUGH, Secretary of the** | ) | |
| **Department of Veterans Affairs,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**TO:   The Honorable Eli J. Richardson, United States District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered February 2, 2021 (Docket Entry No. 8), this *pro se* case was referred to the

Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the

Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court is the motion for summary judgment (Docket Entry No. 100) filed

by Defendant Denis McDonough as the Secretary of the Department of Veterans Affairs. Plaintiff

has responded in opposition to the motion. For the reasons discussed below, the undersigned

respectfully recommends that the motion be granted in part as set out herein.

## I.  FACTUAL BACKGROUND

The Court presumes the parties' familiarity with the case and sets out only a brief factual

background summary.

Stephen Downs ("Plaintiff") is a male over the age of 40 and a former employee of the United

States Department of Veterans Affairs ("VA"). He worked at the VA's Tennessee Valley Healthcare

System ("TVHS") facility in Nashville, Tennessee from October 2015 until his resignation on

February 17, 2021. Plaintiff began working for the VA part-time and became a full-time employee in February 2016 after being selected for a Medical Support Assistant ("MSA") position. In October 2017, he became an Advanced Medical Support Assistant ("AMSA"). Plaintiff's duties as a MSA and an AMSA primarily involved customer service, scheduling patients for appointments, and directing patients to providers at the facility. In December 2017, he was selected for a position as an Executive Secretary for the Associate Director of Patient Care Services ("ADPCS"). The ADPCS at this time was Cynthia Johnson ("Johnson"). Plaintiff was one of several Executive secretaries in the office and the only male. His duties were to complete office tasks and support the Health System Specialists in the Office of the ADPCS. Although Plaintiff remained in this position until his resignation, he was assigned to three temporary work details in different offices during the last two years of his employment: (1) a Program Support Assistant ("PSA") in the Patient Advocate Office ("PAO") from October 2019 to April 2020; (2) an AMSA in the "Whole Health" office ("Whole Health") from April 2020 to sometime in the fall of 2020; and, (3) a MSA in the Business Office from January 2021 to his resignation the next month. None of the work details reduced Plaintiff's pay or benefits, and he appears to have worked remotely beginning with his detail to Whole Health and continuing until his resignation.

Plaintiff was initially supervised by Health Systems Specialist Jennifer Smith when he began working as an Executive Secretary. In September 2018, Emma Phillips ("Phillips") became a Supervisory Health System Specialist in the ADPCS Office and began supervising Plaintiff. Even though Plaintiff changed work details from 2019-2021, Phillips remained his supervisor of record until his resignation. Plaintiff's daily supervision during these details, however, was by other VA management employees: (1) PAO was supervised by Joseph Hunt Blair ("Blair"), a Supervisory Health System Specialist serving as Executive Assistant to the Director; (2) Whole Health was

2

supervised by Trina Camara ("Camara"), a Supervisory Advanced Medical Support Assistant; and, (3) the Business Office was supervised by Timothy Sears, a Supervisory Medical Support Assistant.

The last two and a half years of Plaintiff's employment did to go smoothly, which he attributes to workplace discrimination and retaliation against him. He believes that he was treated harshly by Phillips and that she took actions as his supervisor during 2018 and 2019 that hindered and sabotaged his ability to perform his job, such as not providing him with the proper "tools" and training, revising or altering his work product, preventing him from having full access to the office's administrative software and calendaring/appointments/travel systems, reducing his duties and responsibilities, and overly supervising him. He asserts that that received a poor job performance review from Phillips in 2019 that was undeserved. He also alleges that Johnson took unwarranted steps to remove him from employment with the VA, which resulted in a written proposal to remove him from employment, dated May 18, 2020.[1] He also contends that he applied for two VA positions for which he was not selected; an EEO Program Specialist position in July 2020 and a Patient Representative position in February 2021.

Plaintiff contends that the succession of work details to other offices that occurred after his annual performance review with Phillips in October 2019, were not requested by him and involved lesser work duties and responsibilities. He asserts that the work environments in these details were also fraught with problems. He contends Blair belittled him and called him a "peon" and later issued to him unwarranted written counselings for unprofessional behavior and for being absent from work without leave. Plaintiff contends that while he was in Whole Health, Camara attempted to pressure him to engage in what Plaintiff believed to be illegal activity regarding the medical care of veterans.

---

[1] *See* Exhibit G to Declaration of Kandice Chandler (Docket Entry No. 107-7) and Exhibit J (Docket Entry No. 107-10).

3

Plaintiff reported Camara's actions and also alerted VA officials about what he believed to be unlawful management activities regarding the selection of employees for jobs at the TVHS. Plaintiff alleges that he complained about his treatment to Phillips, EEO director Timothy Eckwood ("Eckwood"), and TVHS Director Jennifer Vedral-Baron ("Vedral-Baron"), but that his situation did not improve and that VA officials failed to support him, even when he alerted them that he believed he was having health issues and a nervous breakdown. Plaintiff contends that by the time he was detailed to the Business Office in January 2021, he was so mentally and physically distraught that he had to take a leave of absence for several days and ultimately was forced resign.

Defendant, on the other hand, asserts that Plaintiff's work performance was deficient, that he did not accept strategies for improvement or accept training opportunities that were presented to him, and that he essentially balked at supervision. Defendant states that Plaintiff was detailed to positions that were less administrative and that were meant to compliment his skill set but that he continued to exhibit poor work performance in those details and further exhibited uncooperative and defiant behavior towards his detail supervisors. Defendant asserts that Plaintiff's poor work performance warranted his proposed removal from federal service but that his filing of baseless whistleblower complaints stalled the removal process and that he resigned from employment prior to the completion of the proposed removal proceeding. Defendant rejects any allegation that the actions taken with respect to Plaintiff were linked to discrimination or retaliation against him.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff initiated three EEO complaints about his perceived mistreatment: (1) Complaint No. 200I-0626-2020100202, filed November 11, 2019;[2] (2) Complaint 200I-0626-2020103466, filed May

---

[2] Neither party appears to have filed the Final Agency Decision on this EEO complaint or, if it has been filed, the Court is unable to locate it in the record.

4

15, 2020, Final Agency Decision issued February 17, 2021;[3] and, (3) Complaint 200I-VI09-2021102316, filed March 26, 2021, Final Agency Decision issued April 18, 2022.[4] None of the EEO complaints resulted in a favorable decision for Plaintiff.

Plaintiff also made at least two internal "whistleblower" complaints about what he believed was illegal or wrongful activity at the VA: (1) a complaint made November 29, 2019, about the actions of Phillips and Blair; initial memorandum of findings by VISN-9 on February 7, 2020, that the claims were not substantiated or partly substantiated and that no corrective action was required;[5] and, (2) complaint made on or about September 2020, about the actions of Camara; initial fact-finding by VISN-9 on October 8, 2020, that found no wrongdoing and that Plaintiff "seems to have a lack of knowledge on current VHA scheduling and consult processes."[6] Neither complaint resulted in a favorable decision for Plaintiff.[7] Plaintiff also initiated contact with the Office of Special Counsel ("OSC") seeking corrective action about the proposed removal from employment.[8] There is no indication in the record that this contact resulted in any action that was favorable to Plaintiff other than a hold on the removal action while the OSC case was pending.[9]

### III. PROCEDURAL BACKGROUND

While still employed at the VA, Plaintiff initiated this *pro se* lawsuit on December 18, 2020. *See* Complaint (Docket Entry No. 1). After his resignation, he filed an amended complaint. *See* First

---

[3] *See* Docket Entry No. 37-1.
[4] *See* Docket Entry No. 64-3.
[5] *See* Exhibit A to Declaration of Daniel Pacheco II (Docket Entry No. 108-1 at 2-6).
[6] *See* Exhibit A to Declaration of Gary Carroll (Docket Entry No. 106-1 at 2-3).
[7] Daniel Pacheco states that he is unaware of any adverse decision by the Office of Accountability, WhistleBlower Protection or by the Office of Special Counsel with respect to any of the claims made in Plaintiff's November 2019, complaint. *See* Docket Entry No. 108 at ¶ 6. Plaintiff has offered nothing to the contrary.
[8] *See* Declaration of Pacheco at ¶ 4.
[9] The hold was deactivated upon Plaintiff's resignation. *Id*. at ¶ 5.

5

Amended Complaint (Docket Entry No. 35). Plaintiff's motions to further amend his complaint were denied in all respects except for his assertion that his Title VII claim for a constructive discharge was exhausted during the pendency of this lawsuit. *See* Order entered August 2, 2022 (Docket Entry No. 72).

Alleging employment discrimination, retaliation, and other unlawful conduct, Plaintiff brought numerous claims under several different statutes and theories. By Order entered February 9, 2022 (Docket Entry No. 61), the Court dismissed many of these claims when ruling on an early filed motion to dismiss.[10] The surviving claims are: (1) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.; (3) retaliation under Title VII and the ADEA; and, (4) corresponding claims of gender and age discrimination under the Tennessee Human Rights Act ("THRA"), T.C.A. §§ 4-21-101 *et seq*. *See* Docket Entry No. 61 at 2.

After Defendant filed an answer (Docket Entry No. 62), the Court entered a scheduling order (Docket Entry No. 63) and amended scheduling order (Docket Entry No. 86 at 4-5), providing for periods of pre-trial activity in the case. Defendant's pending motion for summary judgment was timely filed by the May 26, 2023, dispositive motion deadline.

As the record in the case indicates, discovery between the parties has been contentious. *See* Orders entered August 2, 2022 (Docket Entry No. 73), December 15, 2022 (Docket Entry No. 86), and October 2, 2023 (Docket Entry No. 112). In the October 2, 2023, Order, the Court denied all of

---

[10] The Court: (1) dismissed claims brought under the No Fear Act, 42 U.S.C. § 1983, the False Claims Act, the Whistleblower Protection Act, the Americans with Disabilities Act, and the Rehabilitation Act of 1973; (2) found that claims under other statutes had not been pled; and, (3) dismissed claims against the individually named defendants.

6

the then pending discovery motions.[11] By Order entered November 14, 2023 (Docket Entry No, 118), the Court determined that a final discovery issue regarding Plaintiff's deposition transcript was resolved and that the Court would proceed to address Defendant's motion for summary judgment.[12]

## IV. DEFENDANT'S MOTION AND RESPONSE

Defendant seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendant argues that claims under the THRA are not viable because the federal anti-discrimination statutes provide the exclusive remedy for claims of job discrimination in the federal workplace. As to the merits of Plaintiff's age, gender, and retaliation claims, Defendant argues that Plaintiff cannot establish that he was subjected to an unlawful hostile work environment and cannot establish that he was constructively discharged. Defendant further contends that, with the exception of his non-selection for two open positions, Plaintiff cannot show that he suffered an adverse employment action and thus cannot satisfy a *prima facie* case for a claim of discriminatory treatment or retaliation. Finally, Defendant argues that Plaintiff was not selected for the two open position because he was not as qualified as the candidates who were selected and that he has no evidence supporting a conclusion that his non-selection was a pretext for discrimination against him.

Defendant supports its motion with a statement of undisputed material facts (Docket Entry No. 102), a memorandum of law (Docket Entry No. 113), excerpts from Plaintiff' deposition testimony (Docket Entry No. 113-2), Plaintiff's responses to discovery in the EEO administrative

---

[11] Plaintiff's second motion to compel, for a discovery conference, and for additional time for written discovery (Docket Entry No. 87), Plaintiff's motion to strike (Docket Entry No. 91), and Plaintiff's motion to appoint a special master/forensic expert and for a protective order (Docket Entry No. 99).

[12] Plaintiff has filed motions for review of the Orders entered October 2 and November 14, 2023. *See* Motions for Review (Docket Entry Nos. 115 and 119). The motions for review are currently pending before the Court.

process (Docket Entry No. 113-1) and copies of e-mails (Docket Entry Nos. 13-3 to 113-6), and with the declarations and exhibits attached thereto of seven VA employees: (1) Julius Baker, Supervisory Human Resources (HR) Specialist (Docket Entry No. 103); (2) Jospeh Blair (Docket Entry No. 104); (3) Trina Camara (Docket Entry No. 105); (4) Gary Carroll, formerly the Chief Compliance Business Integrity and Ethics Officer at TVHS (Docket Entry No. 106); (5) Kandice Chandler, Supervisory Human Resources Management Specialist for Employee Labor Relations, Benefits, Reasonable Accommodation and HR Development for Veterans Health Administration MidSouth Veterans Integrated Service Network ("VISN-9") (Docket Entry No. 107); 96) Daniel Pacheco, Human Resources Consultant (Employee Relations/Labor Relations) assigned to VISN-9 (Docket Entry No. 108); and, (7) Timothy Sears (Docket Entry No. 109). Defendant also relies upon other evidence that was filed in support of its prior motions to dismiss: (1) the affidavits of Johnson (Docket Entry No. 23), Phillips (Docket Entry No. 24), and Blair (Docket Entry No. 25) that were submitted as part of the investigation into Plaintiff's EEOC Complaint No. 200I-0626-2020100202, and (2) the declaration and exhibits attached thereto of Robbie Barham, District Manager for the Southeast District, Office of Resolution Management, Diversity & Inclusion ("ORMDI") (Docket Entry No. 42).

Plaintiff's initial response to the motion was filed when the final batch of discovery motions were still pending and primarily argues that Defendant has not cooperated in discovery, that the discovery motions need to be resolved before the summary judgment motion is heard, and that genuine disputes exist. *See* Plaintiff's First Response (Docket Entry No. 110). Included in his initial response is Plaintiff's unsworn declaration, in which he states that "evidence will show" that various of his factual allegations occurred and that he "rejects every item in defendant['s] statement of facts as premature and objects to the admissibility, its relevance and authenticity." *Id*. at 4-6.

After the Court's resolution of the outstanding discovery motions, Plaintiff filed a second response that more directly addresses the motion for summary judgment. *See* Plaintiff's Second Response (Docket Entry No. 117). Plaintiff disagrees with Defendant's narrative of the case and sets forth arguments in support of his hostile work environment claim and his constructive discharge claim.[13] *Id*. at 14-19. Plaintiff concludes by arguing that "[a]t this juncture summary judgment would not be appropriate" and requests that "this case move forward with additional discovery to get the data requested that directly supports plaintiff[']s] claims or allow this case to proceed for trial by jury." *Id*. at 19. Plaintiff's second response includes a response to Defendant's statement of undisputed material facts. *Id*. at 4-14. However, neither Plaintiff's overall response nor his response to the statement of undisputed material facts are supported by any evidence or by citation to evidence that is in the record.[14]

## V. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A

---

[13] In his second response, Plaintiff describes his constructive discharge claim as also being "wrongful termination by breach of contract." *See* Second Response at 17. There is no claim in this action for either wrongful termination or breach of contract.

[14] Local Rule 56.01(c)(3) requires the non-movant to support disputed facts with specific citations to the record.

9

genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols.*, Inc., 901 F.3d 619, 627–28 (6th Cir. 2018); Rule 56(c)(1)(A). Once the moving party has met this burden, the nonmoving party is not entitled to a trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

## VI. TITLE VII AND ADEA

Title VII makes it unlawful for an employer Ato fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.@ 42 U.S.C. ' 2000eB2(a)(1). Similarly, the ADEA prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). These statutes protect an employee from materially adverse employment

10

actions that are linked to a discriminatory animus against the employee because of the protected status. The statutes also provide employees with "the right to work in an environment free from discriminatory intimidation, ridicule, and insult, and thus prohibit harassing conduct that is Asufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986).

"Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). Claims must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence is evidence which, if believed, requires no inferences to conclude that an unlawful animus was a motivating factor in the conduct or action that is challenged by the plaintiff. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If the plaintiff relies upon circumstantial evidence, the Court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff is first required to show a presumption of discrimination by establishing a *prima facie* case. If a *prima facie* case is established, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for discrimination. *Id*. at 508. Whatever method of proof is used, the ultimate burden always remains on the plaintiff to show that he or she suffered intentional discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 518.

11

## VII. ANALYSIS

After review of the parties' filings with respect to the motion for summary judgment and the relevant parts of the record, the Court finds that Defendant is entitled to summary judgment at this time on all of Plaintiff's claims except for his claim of unlawful retaliation under Title VII and the ADEA. Based upon the evidence that is before the Court, no reasonable jury could find in favor of Plaintiff on his claims under the THRA or his claims of discrimination under Title VII and the ADEA. Any questions of fact that exist as to these claims do not rise to the level of genuine issues of material fact that require resolution by the trier of fact at trial.

### A. Plaintiff's Assertion that Additional Discovery is Necessary

Plaintiff asserts that Defendant has not cooperated in discovery, that additional discovery is needed prior or a ruling on the summary judgment motion, and that he has been prevented from obtaining evidence that would support his claim, including what he contends is direct evidence of discrimination, retaliation, continuing violations, and constructive discharge. *See* Plaintiff's First Response; Plaintiff's Second Response at 19.

The Court finds no basis for such relief. First, Plaintiff has not actually sought relief under Rule 56(d), which provides the mechanism for seeking relief from a motion for summary judgment based upon the non-movant's assertion that facts are unavailable to justify its opposition to the motion, and has not complied with the rule's requirement that a request for such relief be supported by affidavit or declaration.

Further, and more importantly, Plaintiff's arguments are essentially a reassertion of the arguments made in his prior discovery motions that were denied. In denying those motions, the Court addressed and resolved the outstanding discovery disputes in this case and rejected Plaintiff's

12

arguments that he is entitled to additional discovery and/or a motion to compel. The Court finds no basis for relief under Rule 56(d).

### B. THRA Claim

Defendant is entitled to summary judgment on Plaintiff's THRA claim. The Sixth Circuit has explicitly held that "[f]ederal employees must rely upon Title VII and other federal antidiscrimination statutes that apply to the federal government as the exclusive remedy for combating illegal job discrimination." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006); *Davis v. Runyon*, 1998 WL 96558, at *5 (6th Cir. Feb. 23, 1998). Accordingly, Plaintiff, as a former federal employee, does not have a viable claim under the THRA for alleged employment discrimination based on events occurring during his federal employment. *See Hedrick v. Tennessee Valley Auth. Bd. of Directors*, 2014 WL 1515422, at *5 (E.D.Tenn. Apr. 18, 2014) (employee of federal agency cannot bring claim under THRA because Title VII is the exclusive judicial remedy for claims of discrimination against a federal employee); *Nichols v. Snow*, 2006 WL 167708, at *6 (M.D.Tenn. Jan. 23, 2006) (Nixon, J.) (dismissing THRA claims of federal employee because Title VII provides the exclusive remedy for discrimination claims against a federal employer).

### C. Hostile Work Environment

Defendant is entitled to summary judgment on this claim. To establish a claim for a hostile work environment, Plaintiff must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment affected a term, condition, or privilege of his employment; and, (5) Defendant knew or should have known about the harassment and failed to take action. *Khalaf v. Ford Motor Company*, 973 F.3d 469, 482 (6th Cir. 2020). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S.

13

775, 788 (1998). Similarly, the Sixth Circuit has stressed that there is a "relatively high bar" for what constitutes discriminatory behavior for a hostile work environment claim. *See Khalaf*, 973 F.3d at 482. Title VII and the ADEA are not intended to ensure workplace civility, to redress general employee dissatisfaction, or to remedy every workplace dispute. *See Faragher*, 524 U.S. at 788; *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017); *Vitt v. City of Cincinnati*, 97 F.App'x 634, 638 (6th Cir. 2004).

When evaluating a hostile work environment claim, courts examine "the totality of the alleged harassment to determine whether it was sufficiently severe or pervasive to alter the conditions" of employment. *Phillips*, 854 F.3d at 327. The United States Supreme Court has suggested factors for courts to consider when assessing hostility, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Courts must employ both an objective and subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard the environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).

Summary judgment should be granted to Defendant on the hostile work environment claim for two main reasons. First, there is virtually no evidence that Plaintiff was subjected to actual harassment. Second, there is likewise a scarcity of evidence that any of the conduct complained about by Plaintiff occurred because of his gender or age.

As to the first reason, nearly all of the events that Plaintiff points to as harassing conduct are employment-related actions, a poor work evaluation, changed duties and work details to other positions within the TVHS, scrutiny and changes to his work by his supervisor, the discontinuation

14

of a job program he was responsible for, a proposed job dismissal, issues with access to scheduling software and office programs, and being given a small work station at the PAO detail. However, employment-related actions, even if subjectively perceived by the employee as harassing, are not the kind of conduct that can contribute to a finding of a hostile work environment. *Ogbonna-McGruder v. Austin Peay State University*, 2023 WL 3572891, at * 9 (M.D.Tenn. May 19, 2023) ("actual employment-related actions taken by an employer against an employee (negative though they may be for an employee) do not fit [the description of workplace harassment]"). This is so because the hallmark of a hostile work environment claim is discriminatory intimidation, ridicule, and insult that is either so severe or so pervasive that it creates and abusive and hostile work environment. Employment-related actions, whether justified or not, are simply not evidence of intimidation, ridicule, or insult that supports a hostile work environment claim. *Id*. at **9-10. Further, a hostile work environment does not arise because of interpersonal conflicts between an employee and a supervisor or because a supervisor is difficult to deal or takes actions with which the employee disagrees. *See Vitt*, *supra*.

Plaintiff offers virtually no evidence of actions that were not employment-related and that were the type of threats, physical violence or aggression, unwanted contact, innuendo, slurs, pranks, or abuse that objectively evidence a hostile work environment. Although Plaintiff alleges that he was called a "peon" by Blair and "old school" by Phillips and Johnson, these comments are isolated and, although perceived by Plaintiff as offensive, are relatively harmless. Such evidence falls far short of supporting a hostile work environment claim. *See Harris*, 510 U.S. at 21 (mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to create a hostile work environment); *Roseman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 2021 WL 4931959, at *3 (6th Cir. July 14, 2021) ("harsh, rude,

15

or offensive offhand comments, without more, cannot constitute severe harassment"); *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F.App'x 851, 858 (6th Cir. 2002) (being called names such as "looney toon,' "wacko," "crazy," and "Rambo" was not sufficient to create a hostile work environment); *Eachus v. Haslam*, 2016 WL 323675 at *7 (M.D.Tenn. Jan. 27, 2016) ("I hear you are going to retire" and "you need to retire" were not themselves harassing and were not sufficient to show an age based hostile work environment).

Second, the Court finds a paucity of evidence in the record upon which a reasonable conclusion could be reached that any of the acts about which Plaintiff complains and points to as the basis for his hostile work environment claim were linked to either his gender or his age. This linkage is necessary because evidence that an employee was subjected to a hostile work environment is not itself sufficient to support a claim under Title VII or the ADEA. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011); *Ogbonna-McGruder*, 2023 WL 3572891 at *7. There must be a showing that the events creating a hostile work environment were events that occurred because of the employee's protected classification. *Id*. The absence of facts connecting Plaintiff's age or gender to the events alleged to be harassment is fatal to his claim. *See Haywood v. DeJoy*, 2022 WL 16647967, at *4 (6th Cir. Oct. 6, 2022); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996).

In Plaintiff's case, he offers no evidence of any gender-based or ageist slurs, statements, or comments that accompanied any of the events at issue and that would show that these events occurred because of his gender or age. The "old school" comment alleged to have been made by Phillips and Johnson is simply too vague and innocuous to constitute direct evidence of an ageist animus. *See Jackson v. Trinity Health-Michigan*, 656 F.App'x 208, 215-16 (6th Cir. 2016); *Gilster v. Humana, Inc.*, 2016 WL 223582, at *5 (S.D.Ohio Jan. 19, 2016); *DeBarr v. Cleveland Clinic Foundation*, 918 F.Supp.2d 676, 683-84 (N.D.Ohio 2013).

16

Plaintiff argues that age or gender animus can be inferred based upon comparative evidence about how Phillips and Johnson treated him as compared to younger, female co-workers in the ADPCS. Specifically, he contends that the younger, female Executive Secretaries did not experience the repeated problems that he experienced with his Concur account, Sharepoint, and Office products, which Plaintiff generically refers to as the "tools" that he needed to perform his duties as an Executive Secretary, and that Phillips and Johnson knew of these problems yet failed to remedy them. *See* Plaintiff's Second Response at 15-16. This argument correctly relies upon a method of proof for proving that alleged harassment is based upon a protected class when there is an absence of direct evidence of unlawful animus. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998); *Williams*, 643 F.3d at 511.

However, the Court finds that Plaintiff's argument is unpersuasive and is insufficient to raise genuine issues of material fact that require resolution of the hostile work environment claim at trial. As the Court has already found, Plaintiff fails to set forth evidence of actual harassment in the workplace, as opposed to evidence of his dissatisfaction with employment-related actions and what he believed to be faults or deficiencies with his supervision by Phillips and Johnson. A comparison of how Plaintiff and other Executive Secretaries were treated with respect to actions that do not rise to the level of harassing conduct is not germane because it sheds no light on a genuine question of material fact. Furthermore, Plaintiff's proof on the issue of his ability or inability to access the Executive Secretary "tools" as compared to younger, female Executive Secretaries is lacking. Although Plaintiff asserts that he had difficulty accessing and using these tools on several occasions and that this was not the case with the female Executive Secretaries, he has offered nothing other than his own testimony to support his assertion. While Plaintiff's testimony is sufficient to support his assertion that he personally had difficulty accessing these tools, it is not sufficient to show he was, in

17

fact, somehow treated differently than the other younger, female Executive Secretaries with respect to this workplace issue.

In the end, the Court finds that the evidence before the Court, even when viewed in the light most favorable to Plaintiff as the non-moving party, is not sufficient for a reasonable jury to find that Plaintiff was subjected to a hostile work environment based on either his gender or race. Thus, Defendant is entitled to summary judgment on this claim.

## D. Discriminatory Treatment

In addition to claiming that he was subjected to a hostile work environment, Plaintiff claims that several employment actions taken by Defendant were acts of discrimination against him because of his gender or age. Specifically, he points to the poor performance evaluation that he received, his details to other positions within the TVHS, the proposed removal from employment, and his non-selection for two open positions.

Plaintiff offers no direct evidence supporting a claim that these actions were discriminatory. In the absence of such evidence, his claim proceeds under the burden-shifting analysis. *Johnson*, 319 at 865-66. To establish a *prima facie* case, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Defendant argues that, with the exception of Plaintiff's non-selection for two positions, Plaintiff's claim fails because he cannot show that he was subjected to an adverse employment action.

The Court agrees with Defendant and notes that, in his response, Plaintiff does not specifically address Defendant's arguments on this issue. To demonstrate an adverse employment action, an

18

employee must show a "materially adverse change in the terms and conditions of a plaintiff's employment." *Deleon v. Kalamazoo Cnty. Road Com'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citation omitted). This materially adverse change typically comes in the form of a changed employment status, such as hiring, firing, failing to promote, reassignment, or a change in benefits. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). "Mere inconvenience or an alteration of job responsibilities" is insufficient to demonstrate an adverse employment action. *Deleon*, 739 F.3d at 918 (quotation marks omitted). Increased scrutiny or surveillance by a supervisor, minor discipline, and an employee's dissatisfaction with general workplace issues are likewise not sufficient to constitute materially adverse changes in the terms of employment in the discrimination context. *Lee v. Cleveland Clinic Found.*, 676 F.App'x 488, 494 (6th Cir. 2017)

The 2019 performance evaluation of Plaintiff by Philips that resulted in an "unacceptable" rating was not an adverse employment action. The Sixth Circuit has held that "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007). *See also Holt v. Morgan*, 79 F.App'x 139, 141 (6th Cir. 2003); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999); *Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 1283087, at *49 (M.D.Tenn. Apr. 28, 2022) (citing *Tuttle* in concluding that a negative performance evaluation that did not adversely impact the plaintiff's wages or salary did not constitute an adverse employment action). Plaintiff offers no evidence of an impact on his wages or salary because of the evaluation. Indeed, Plaintiff does not address this issue at all.

Nor has Plaintiff offered evidence or argument that the proposed job removal initiated by Johnson amounted to an adverse employment action. Generally, the adverse employment element of a *prima facie* case is not satisfied by the mere proposal for an adverse employment action when that

19

proposal does not materialize into an actual adverse action. *See Varela v. Potter*, 2006 WL 861274, at *9 (W.D. Ky. Mar. 29, 2006) (plaintiff's proposed removal did not amount to an adverse employment action because it never materialized); *Hardy v. Potter*, 191 F.Supp.2d 873, 883 (E.D. Mich. 2002) (plaintiff failed to show that he suffered an adverse action for the purposes of claims of disability discrimination and retaliation when he received a notice of proposed removal but the proposed removal was held in abeyance and he was not terminated). *See e.g. McMillian v. Potter*, 130 F.App'x 793, 797 (6th Cir. May 11, 2005) (proposed suspension was not an adverse action where it did not actually result in a disciplinary suspension or other action).

Finally, it is undisputed that Plaintiff's transfer to different job details did not impact his salary or benefits. Job reassignments without salary changes do not ordinarily constitute adverse employment decisions in employment discrimination claims. *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987). Although Plaintiff complains that the duties required by these details were lesser duties than would be consistent with his pay grade and position as an Executive Secretary, he has not set forth evidence showing that the duties in these details, which each involved some manner of office support or clerical work, were so menial or were so significantly different from his prior duties that the new job details amounted to a material change in the terms and conditions of his employment. Plaintiff's subjective objection to the work details does not control with respect whether they were so significantly different that they amounted to an adverse employment action. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004).

The Court now turns to the two events that Defendant acknowledges were adverse employment actions – Plaintiff's non-selections for the EEO Program Specialist position and the Patient Representative position. Defendant concedes that Plaintiff satisfies a *prima facie* case with respect to these non-selections but contends, with supporting evidence, that Plaintiff was not selected

20

for the positions because he was not the highest scoring or top ranked candidate.  *See* Declaration of Baker. Defendant's asserted reason is a legitimate, non-discriminatory reason that satisfies it's burden of production.  In the face of this explanation, the burden is shifted to Plaintiff to set forth evidence that the explanation is actually a pretext that hides discrimination against him.  Plaintiff fails to offer any argument or evidence on the issue of pretext.  Because Plaintiff fails to satisfy his burden of producing sufficient evidence from which a jury may reasonably reject Defendant's explanation, Defendant is entitled to summary judgment on the claim.

### E. Constructive Discharge

When an employee resigns from his employment, the employee is, of course, unable to show that his or her employment was terminated and is thus unable to show that an adverse employment action occurred for the purposes of a claim of discrimination.  In certain circumstances, however, the law treats an employee's resignation as tantamount to a termination if the employee can show that he or she was "constructively discharged."  *Green v. Brennan*, 578 U.S. 547, 555 (2016).  A constructive discharge occurs when the employee was discriminated against to the point that the working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  *Id*. (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).

The Sixth Circuit has noted that "intolerability is a demanding standard," *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020), and that constructive discharge is "hard to prove." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018).  Indeed, more is required to show that an intolerable workplace existed than is required to satisfy the "severe or pervasive" standard for hostile work environment claim.  *See Pennsylvania State Police*, 542 at 147.  Evidence of criticism or negative feedback directed at the employee will not suffice, and the standard is not met by an employee's subjective discontent.  *Tchankpa*. 951 F.3d at 814-815; *Agnew v. BASF Corp.*, 286

21

F.3d 307, 310 (6th Cir. 2002). Events in the workplace that "suggest an objectively intolerable workplace" include "demotion, reduction in salary, badgering, harassment, humiliation, and sexual assault." *Tchankpa*, 951 F.3d at 814. Other relevant events may include a reduction in job responsibilities, reassignment to menial or degrading work, reassignment to work under supervisors outside the protected class, and offers of early retirement or continued employment on terms less favorable than the employee's former status. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). Evidence of such events, however, is not enough. In order to show a constructive discharge, the employee must also set forth proof linking the events creating the intolerable workplace to a discriminatory animus on the part of the employer. *Id*. at 816; *Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 1283087, at *39 (M.D. Tenn. Apr. 28, 2022).

Although Plaintiff provides a brief argument against the dismissal of his constructive discharge claim, *see* Plaintiff's Second Response at 17-19, his argument does not directly address the underlying merits of the claim or any of the relevant law.[15] In light of the absence of a pertinent argument from Plaintiff and in light of the demanding standard required for a claim of constructive discharge, the Court finds that summary judgment should be granted to Defendant on this claim. No reasonable jury could find in favor of Plaintiff on the claim based upon the evidence that is before the Court.

As the Court has already concluded in the context of Plaintiff's hostile work environment claim, there is no evidence showing that Plaintiff was subjected to workplace harassment or hostility,

---

[15] Plaintiff appears to believe that he continues to have a claim in this case for a constructive discharge linked to his whistleblowing activity. *See* Second Response at 18. This is a mistaken belief. Plaintiff's active claims include only his Title VII and ADEA claims and all other claims, including any claims arising from "whistleblowing activity," have been dismissed. *See* Orders entered February 9, 2022 (Docket Entry No. 61), and August 2, 2022 (Docket Entry No. 72).

22

let alone workplace harassment or hostility linked to his gender or age. Further, the Court notes that Plaintiff was teleworking for approximately ten months prior to his resignation and thus was removed from the actual workplace. There is simply no evidence that would support a conclusion that Plaintiff's work environment would have been viewed by a reasonable person as anything close to intolerable.

The Court further finds that the evidence before the Court of employment-related events about which Plaintiff complains falls far short of showing an intolerable working situation which would have compelled a reasonable person to feel the need to resign. Plaintiff's salary and paygrade were not reduced, and he has offered no evidence of the loss of work benefits. Although Plaintiff was detailed to different work duties, these duties were comparable office support and clerical work and were not so different in kind from those of the Executive Secretary position that the work details could be viewed as forcing Plaintiff to engage in menial or degrading work in order to remain employed. Further, the issuance of a critical performance review is not itself evidence of an intolerable working condition. *See Agnew*, 286 F.3d at 310. Certainly, the proposed job removal initiated by Johnson soon after the poor performance review is a relevant event to be considered. However, a work environment does not become intolerable merely because an employer indicates dissatisfaction with an employee's work performance and initiates a formal process to remove the employee from employment. Such a routine, albeit, significant, act is simply a normal employment act that does not, in and of itself, evidence intolerability. If that were the case, a constructive discharge claim would arise in every instance when an employer took formal steps to initiate the employee's removal.[16]

---

[16] The Court notes that, in the wake of the Supreme Court's decision in *Green*, the law in this Circuit is unsettled as to whether a constructive discharge claim continues to include a

While Plaintiff may not have enjoyed his employment during the last two years of his employment, "the law of constructive discharge does not guarantee an 'ideal' workplace." *Shoap v. City of Crossville*, 321 F. Supp. 3d 839, 847 (M.D. Tenn. 2018). Indeed, in the context of determining whether a constructive discharge occurred, the Sixth Circuit has stated that the Court's "job is to confirm that the plaintiff's work conditions were indeed hellish, or at least close to it." *Tchankpa*, 951 F.3d at 815. No reasonable jury could find that Plaintiff suffered a constructive discharge based upon the evidence before the Court.

### F. Retaliation

Plaintiff's final claim is that he was retaliated against because he both made oral complaints to supervisors about what he perceived as discrimination and because of the two formal EEO complaints that he filed while employed at the TVHS.[17] Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e3(a). The ADEA contains an analogous anti-retaliation provision. 29 U.S.C. § 623(d). The anti-retaliation provisions protect an employee from materially adverse actions that are based on retaliation. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775-76 (6th Cir. 2018). This includes being protected from a retaliatory hostile work environment. *Khamati v. Sec'y of Dep't of the Treasury*, 557 F.App'x 434, 443 (6th Cir. 2014) ("a retaliatory hostile work environment claim

---

"deliberateness" or intent element. *Compare Tchankpa*, 951 F.3d at 816-17; *Garcia v. Beaumont Health Royal Oak Hosp.*, 2022 WL 5434558, at *7 n.3 (6th Cir. Oct. 7, 2022), *with Everly v. Everly*, 958 F.3d 442, 463 (6th Cir. 2020) (concurrence); *Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 1283087, at *38 (M.D. Tenn. Apr. 28, 2022). Because the Court finds that Plaintiff's claim fails on the issue of intolerability, it is not necessary to address whether evidence of deliberateness or intent by Defendant must also be shown.

[17] To be clear, Plaintiff's only claim of retaliation that is before the Court is a claim under Title VII and ADEA. The claim of retaliation for whistleblowing activity has already been dismissed.

24

[is] a variety of retaliation").  To show a materially adverse action for purposes of a retaliation claim, the plaintiff must show that the action might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Barrow v. City of Cleveland*, 773 F.App'x 254, 262-63 (6th Cir. 2019).

Much like a discrimination claim, a retaliation claim can be proven with direct evidence or through indirect, circumstantial evidence via the burden-shifting analysis.  Whatever the method of proof that is used, a plaintiff must ultimately "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  Retaliation claims that are premised upon circumstantial rather than direct evidence are analyzed under the familiar *McDonnell Douglas* burden-shifting framework.  *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020).  Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of retaliation by showing:  (1) he engaged in protected activity; (2) the exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.  *George*, 966 F.3d at 459.  If the plaintiff carries this burden, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions."  *Id*.  If the defendant meets this burden, the plaintiff must show that the articulated reason is a pretext for retaliation.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000).

After review of the parties' filings, the Court finds that it cannot, at this time, make any recommendation on the appropriateness of summary judgment on Plaintiff's claim of retaliation. Both parties have fallen short in their duties with respect to the motion for summary judgment.

Plaintiff has not directly responded to Defendant's argument for summary judgment on this claim with a rebuttal that shows why summary judgment should not be granted. Generally, the lack of response to an argument seeking summary judgment on a claim indicates that the plaintiff has abandoned the claim and the moving defendant is entitled to summary judgment on the claim. *See Brown v. VHS of Michigan, Inc.*, 545 F.App'x 368, 372 (6th Cir. 2012) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment"). However, Plaintiff's *pro se* status provides him with some measure of leeway and, while he fails to offer a direct legal response to the motion for summary judgment on the claim, his response in opposition nonetheless proclaims that he suffered retaliation, which indicates that he is not abandoning the claim. *See* Plaintiff's Second Response at 2-4.

On the other hand, Defendant's shortcoming cannot be overlooked because Defendant's motion relies upon an incorrect legal standard for retaliation claims. Defendant incorrectly sets forth that a *prima facie* retaliation claim requires an employee to show that the employer took an **adverse employment action** against the employee. *See* Defendant's Memorandum at 20 n.4 (emphasis in original). This was the law at one time, but the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), clarified that a plaintiff pursuing a retaliation claim need only show that the employer took a "materially adverse" action against the employee, as distinguished from the need to show an "adverse employment action" for a claim of discrimination. The difference is not merely one of terminology; a claim of retaliation can be proven by evidence of alleged retaliatory actions that do not amount to ultimate employment actions. All that a plaintiff pursuing a retaliation claim must show is that he suffered an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57; *Barrow v. City of*

26

*Cleveland*, 773 F.App'x 254, 262-63 (6th Cir. 2019). Given the differing standard, Defendant needed to separate Plaintiff's retaliation claim from his discrimination claim and set out arguments that were specifically directed at the retaliation claim in the context of the correct legal standard. Given the "less onerous" *prima* facie standard required for a retaliation claim, *see Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007), this may well necessitate arguments directed at the later stages of the burden-shifting analysis.

Although many of the same deficiencies and shortcomings that warrant the entry of summary judgment in favor of Defendant on Plaintiff's other claims may ultimately require that summary judgment likewise be granted to Defendant on Plaintiff's retaliation claim, the Court simply cannot render a recommendation on this claim given that Defendant's analysis of the claim is premised upon an incorrect legal standard and does not show that Defendant is entitled to summary judgment as a matter of law.

## R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully **RECOMMENDED** that the motion for summary judgment (Docket Entry No. 100) filed by Defendant Denis McDonough as the Secretary of the Department of Veterans Affairs be **GRANTED** as to Plaintiff's THRA claim and Plaintiff's Title VII and ADEA claims of discrimination. The Court further **RECOMMENDS** that the parties be required to submit supplemental briefing on Plaintiff's Title VII and ADEA retaliation claim for the reasons stated herein.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within

27

the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge