IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN DOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:20-cv-01090 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| DENNIS MCDONOUGH, *Secretary of the Department of Veterans Affairs*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are a motion for review filed by Plaintiff to challenge the magistrate judge's orders filed on October 2, 2023 at Doc. Nos. 111 and 112 (Doc. No. 115, "Motion to Review October Orders"), another motion for review by Plaintiff in objection to the magistrate judge's order filed on November 14, 2023 at Doc. Nos. 111, 112, and 118 (Doc. No. 119, "Motion to Review November Order"),[1] and a Report and Recommendation of the magistrate judge (Doc. No. 121, "R&R") to which Plaintiff has filed objections (Doc. No. 122, "Objections").[2] Because Plaintiff's arguments in the two motions (collectively, the "Motions for Review") and his

---

[1] Because this later motion for review was outside the fourteen-day window to oppose the orders at Doc. Nos. 111 and 112, the Court considers this motion as challenging only the order at Doc. No. 118. That said, the arguments this motion raises go to the Order at Doc. No. 112 by primarily arguing that Plaintiff needs additional time for discovery as discussed herein. The Order at Doc. No. 118 resolved a dispute (after the magistrate judge received Defendant's position on the matter (Doc. No. 114) as required by previous order (Doc. No. 112)) regarding Defendant providing Plaintiff with an opportunity to review the transcript of his deposition. Although the Court does not perceive Plaintiff as making an objection to the magistrate judge's handling of the transcript issue in particular, the Court nevertheless reviewed the related record and agrees with the magistrate judge's order at Doc. No. 118 and, in particular, the characterization that "[b]oth parties' conduct as to th[e] issue is unacceptable."

[2] Herein, the term "Court" usually refers to the undersigned district judge, as distinguished from the magistrate judge who issued the R&R.

Objections all substantively raise the same concern—Plaintiff's belief he has not been afforded proper discovery—the Court will discuss the three (collectively, "Plaintiff's three filings") together, after first distinguishing the applicable legal standards. The Court then will address the claim (for retaliation) as to which the magistrate judge expressly and intentionally declined to make a recommendation.

I.  The Motion for Review and R&R

   A.  Background And Legal Standard

The Motions for Review filed by Plaintiff seek reversal of the magistrate judge's orders at Doc. Nos. 112 and 118. Defendant did not respond to the Motions for Review.[3] Pursuant to Fed. R. Civ. P. 72(a), the Court may modify or set aside any part of a magistrate judge's Order on a non-dispositive matter that is clearly erroneous or is contrary to law. The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Norfolk Cnty Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433, 2019 U.S. Dist. LEXIS 112291, 2019 WL 3003647, at *1 (M.D. Tenn. Apr. 19, 2019); *Equal Emp't Opportunity Comm'n v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). This standard is deferential, and mere disagreement with the magistrate judge and/or an assertion that the magistrate judge should have ruled differently does not rise to a clear error of fact or a decision contrary to law. *See Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 U.S. Dist. LEXIS 163642, 2014 WL 6605504, at *1 (M.D. Tenn. Nov. 19, 2014) ("The Court is not empowered to reverse the magistrate judge's finding simply because this Court would have

---

[3] The Court does not treat Defendant's choice not to respond to the Motions for Review as waiving or conceding any arguments that Defendant has in opposition as Defendant's arguments in the underlying briefing relied in part on the position that Plaintiff was causing the parties to engage repeatedly in unnecessary and expensive litigation on the same issues. As will be described herein, Plaintiff is continuing to raise the same arguments, making Defendant's point.

decided the issue differently."). When examining legal conclusions under the contrary to law standard, a court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832-33 (M.D. Tenn. 2018).

The R&R recommends that the motion for summary judgment (Doc. No. 100, "Summary Judgment Motion") be granted as to Plaintiff's Tennessee Human Rights Act ("THRA") claim and Plaintiff's claims of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), and that the parties be required to submit supplemental briefing on Plaintiff's retaliation claim under Title VII and the ADEA. Plaintiff, proceeding pro se, filed Objections on February 16, 2024.[4] On February 23, 2024, Plaintiff filed "Supplemental Objections and Offers of Evidence" (Doc. No. 123, "Supplement").[5]

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review de novo any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge

---

[4] Plaintiff filed his Objections on February 16, which was a few days after the deadline, so the Court alternatively denies his objections as being submitted late (without any explanation or request for an extension), an entirely sufficient and independent ground for denial. However, the Court will nevertheless consider the Objections because largely the same arguments therein were raised also in the Motions for Review, and therefore the Court can decide all of Plaintiff's three filings on the merits via the same discussion.

[5] Plaintiff did not provide any justification for filing his Supplement (which was not timely with respect to any pending matter on the docket to which it could possibly have been addressed) beyond his statement that "more evidence [had] been found in a folder that he overlooked." (Doc. No. 123 at 1). But inadvertently overlooking evidence is not a sufficient reason for untimeliness. And plaintiffs, even ones proceeding pro se, have to be diligent in prosecuting their cases. Accordingly, in reviewing the R&R, the Court can disregard any arguments made therein as untimely for not being filed within the window to object to the R&R. Alternatively, even considering it on the merits, Plaintiff's Supplement does not provide any type of specific objection to the R&R and in fact suggests that Plaintiff is unwilling to present probative evidence now because he wishes to unveil at trial (and not before), as discussed below. The Supplement alternatively could be taken as Plaintiff's submission of the supplemental briefing recommended by the R&R, which indeed is how it is treated in the section below.

may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the magistrate judge's report or proposed findings or recommendations to which an objection is made.

B. <u>Analysis</u>

Plaintiff's primary[6] objection to the R&R and his arguments in his Motion for Review boil down to the assertions that Defendant has not cooperated in discovery and that the magistrate judge refused to intervene to allow proper discovery to occur.[7] The Court has reviewed the record and agrees with the magistrate judge's stance on discovery as articulated in the R&R and the Orders at Doc. Nos. 111, 112,[8] and 118. In particular, the Court agrees that "the litigation in this case has clearly been unnecessarily contentious" as a result of the actions of both parties, (Doc. No. 112 at 3); there is "no basis for an order compelling any additional discovery from Defendant or otherwise compelling any action with respect to the laptop," (*Id.* at 4); "there has been no persuasive showing

---

[6] In addition to objecting to the lack of discovery and magistrate judge's characterization of discovery in the R&R, Plaintiff also objects to the magistrate judge's characterization (in her background information of the case) of the administrative proceedings and provides new documents he suggests will clarify the record. Plaintiff has not explained how remedying these alleged mischaracterizations would change the outcome of the R&R; thus, the Court does not consider them. Even so, Plaintiff's filing consisted of hundreds of pages of new documents without any meaningful direction to this Court as to how the documents supported his objections.

[7] The Court declines to expend the resources necessary to distinguish between the arguments or assertions made in the Objections or the Motions to Revise because, even with the benefit of having all of these arguments and assertions collectively considered in connection with each of Plaintiff's three filings, Plaintiff cannot succeed on any of the three.

[8] To the extent that Plaintiff also argues that his motion to strike (which was denied by the magistrate judge in Doc. No. 119) should have been granted, the Court concludes that the magistrate judge was correct in denying that motion because mere disagreement (no matter how fervent) with an opposing party's position is an insufficient basis for a motion to strike. (Doc. No. 112 at 2).

of spoliation by Defendant that warrants any type of sanction," (*Id.* at 5); "the parties have been given sufficient time to engage in discovery," (*Id.* at 6); and that "Plaintiff's arguments are essentially a reassertion of the arguments made in his prior discovery motions that were denied. In denying those motions, the [magistrate judge] addressed and resolved the outstanding discovery disputes in this case and rejected Plaintiff's arguments," (Doc. No. 121 at 12-13).

Plaintiff nevertheless argues that additional discovery is needed because (according to him) he knows that Defendant is withholding requested documents because he has personal knowledge of them inasmuch as (according to him) he had them on his work laptop when employed by Defendant and authored some of them. Despite this alleged personal knowledge, Plaintiff has not informed the Court with any specificity what these documents say but instead makes mere conclusory allegations that they would support his claim. More importantly, while Plaintiff argues for access to his work laptop to access these documents, the record reflects that Plaintiff's profile on his work laptop was deleted. Although the two sides have competing respective theories about who deleted the profile, the declaration from Nathan Wetzel (describing how a profile could be deleted and why he was of the opinion that Plaintiff deleted the profile) is more credible given the amount and nature of the detail included, the fact that Plaintiff inappropriately retained his work laptop after the end of his employment, and that (as noted above) Plaintiff has provided no details about these supposedly missing documents. Plaintiff has provided no reason for the Court to believe that Defendant deleted his profile improperly, let alone in a way rising to the level of spoliation. Moreover, having acknowledged that these documents do not exist via the request for a spoliation order—a request that by definition is based on the requestor's assertion that the spoliated information no longer exists—imposing sanctions against Defendant, Plaintiff cannot justify the need for further discovery.

Finally, in the course of litigating the Summary Judgment Motion (as to which the Court considers the additional filings discussed below), Plaintiff has asserted that he has not presented evidence in support of his claim that he has and intends to present at trial. (*See e.g.*, Doc. No. 123 at 2). This assertion creates multiple problems for Plaintiff. First, it hurts the credibility of his claim that he has been the only good actor in discovery when he suggests to the Court that he is withholding evidence from Defendant in discovery and from this Court as it attempts to decide the pending matters. Second, it bolsters Defendant's credibility both in its assertion in the underlying briefing that Plaintiff has himself been uncooperative in the discovery process and is unnecessarily drawing out the litigation process, and in its veiled insinuations that Plaintiff has staged the spoliation claim. Third, even if further discovery was warranted, Plaintiff suggests additional evidence he *already has* supports his claim and therefore should be presented at trial but that he "is reluctant at this stage to give this court everything he has because some of Plaintiff's evidence would be used to show a jury that witnesses that will be subpoenaed and called upon to testify will certainly commit perjury." But at summary judgment, each side must present the evidence necessary to create a genuine issue of material fact, lest it lose the case before ever even reaching trial; thus, it is a risky gamble to withhold evidence on a motion for summary judgment in order to first unveil it at trial that may not even occur (especially if the withheld evidence is necessary for the withholding party to avoid summary judgment). Defendant's choice not to share "everything he has" at "this stage" (which the Court takes to mean the pretrial stage of litigation, including the summary-judgment stage) suggests that further discovery likewise will not improve the record for summary judgment.

The Court can find no clear error with the magistrate judge's orders at Doc. Nos. 111, 112, and 118, so the Motions for Review are denied.

Plaintiff made no other specific objections to the R&R. The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Ashraf v. Adventist Health System/Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Security*, No. 3:18-cv-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018). The Report and Recommendation is therefore adopted and approved.

## II. Plaintiff's Remaining Claim, i.e. Retaliation in Violation of Title VII and the ADEA.[9]

In adopting the R&R, the Court grants Defendant's Summary Judgment Motion (Doc. No. 100) as to Plaintiff's THRA claim and Plaintiff's Title VII and ADEA claims of discrimination, as recommended in the R&R. As to Plaintiff's Title VII and ADEA retaliation claim—with respect to which the Summary Judgment Motion remains pending— the Court would be inclined to require the parties to submit supplemental briefing, just as the magistrate judge recommended, (Doc. No. 121 at 27), had not the parties already filed such briefing. With such briefing already having been filed and with the Court thus adequately informed of the parties' relevant positions, to conserve judicial resources, the Court hereby revokes its referral to the magistrate judge with respect to the Summary Judgment Motion to the extent that it remains pending. And the Court now proceeds with deciding the Summary Judgment Motion with respect to the claim (i.e., Plaintiff's Title VII and ADEA retaliation claim) that remains pending.

Following the issuance of the R&R, Plaintiff filed the Supplement (Doc. No. 123), which (as noted in a footnote above) the Court perceives to be a (tardy) expression of ongoing objections to the R&R generally as well as Plaintiff's briefing in response to the magistrate judge's recommendation for additional briefing. Defendant filed its supplemental briefing. (Doc. No. 124,

---

[9] The R&R refers to Plaintiff's retaliation "claim" in the singular. The Court does likewise, while being aware that the alleged retaliation allegedly was in violation of two different statutes, i.e., Title VII and the ADEA.

"Defendant's Supplemental Briefing"), to which Plaintiff responded (Doc. No. 125, "Plaintiff's Supplemental Response").[10] Notably, to the extent that the parties were entitled to file more than one brief, that prerogative probably belonged exclusively to Defendant, who—as the summary-judgment movant—would have the right to reply to Plaintiff's opposition. Because the parties did not wait for the Court to decide whether it would adopt the R&R's recommendation of such additional briefing and (if so) set a briefing schedule, the Court must decide whether it will consider both of Plaintiff's filings. Defendant has not replied or indicated an opposition to these filings, so the Court will consider both, especially because even the two together cannot prevent a summary judgment against Plaintiff on the remaining claim.

A. <u>Legal Standard</u>

Although the R&R set forth the applicable legal standards for the retaliation claim, the Court will briefly discuss those standards.

"In order to establish a[n indirect-evidence] prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken

---

[10] Plaintiff made yet another filing after issuance of the R&R (Doc. No. 126) that purports to lay out "a timeline concerning the diligent efforts Plaintiff took to obtain and preserve the[] records to support his claims against the agency and was data that Plaintiff knew existed, would be damaging to the agency, and would be direct evidence of the shenanigans put on by agency actors to shield that data from Plaintiff, said data will also show a timeline to support Plaintiff disclosures and the time and proximity when Plaintiff was claiming abusive interference with plaintiff duties attributed to Jennifer Vedral Baron, Daniel Pacheco, Kristi Pate, Cynthia Johnson, Emma Phillips, Trina Kamara, Jason Cook, Charles Noel." The "timeline" is just the email chain of his conversation with the House Committee on Veterans' Affairs' Subcommittee on Oversight and Investigations in which he speaks about the same allegations he makes in this lawsuit and suggests that the subcommittee's internal investigation may provide him the evidence he needs to be successful in this case.
   As discussed below, in Plaintiff's Supplemental Response (Doc. No. 125), Plaintiff makes vague references to a timeline. But the Court understands those references to be to the "timeline" (multiple chronologies) in his attachment to Plaintiff's Supplemental Response, not to the timelines included in this later, separate filing (Doc. No. 126).

against the employee,[11] and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008); *accord Taylor*, 703 F.3d at 336 ("[Plaintiff] does not present direct evidence of retaliation, and, therefore, she must demonstrate by a preponderance of the evidence four elements: (1) she engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by [her supervisor], (3) [her supervisor] took [an] adverse employment action against [Plaintiff], and (4) there was a causal connection between the adverse employment action and the protected activity."). The Sixth Circuit has noted that "the burden of establishing a *prima facie* case of retaliation is not onerous[.]" *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 550 (6th Cir. 2006) (internal quotation marks and citation omitted). Contributing to such lack of onerousness is the relatively broad notion of "adverse employment action" in the context of retaliation claims in particular. *See Niswander*, 529 F.3d at 720 ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. The retaliation provision instead protects employees from conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citation and some internal quotation marks omitted).

Retaliation claims are subject to the *McDonell-Douglas* framework if there is no direct evidence of retaliation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework as follows:

---

[11] As reflected below, sometimes the term used in this context, synonymously with "adverse action," is "materially adverse action." It appears that in this context, action constitutes an "adverse action" only if the action is "materially" adverse to the employee.

A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (some citations omitted).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (i.e., circumstantial) evidence.[12] *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019). The undersigned has explained:

When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . . .

To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is

---

[12] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*

At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *9–10 (M.D. Tenn. Apr. 26, 2022).

To summarize, to obtain summary judgment on a Title VII or ADEA claim grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's *prima facie* case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); *or*, failing that, (ii) (a) make an evidentiary showing[13] that there was a legitimate, nondiscriminatory reason for its alleged actions and then (b) show that there is no genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext). On the other hand, the plaintiff will avoid summary judgment if: (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any or more elements of the plaintiff's indirect-evidence *prima facie* case, *or* (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to any element(s) of such *prima facie* case as to which the defendant met

---

[13] To be clear, the requirement here is not merely to *articulate* a legitimate reason, but also to *present evidence* that the articulated legitimate reason was in fact the reason.

its initial burden to show the lack of a genuine issue of material fact; and (ii) either (a) the defendant cannot make an evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.

B. <u>Analysis</u>

For purposes of summary judgment, Defendant concedes the satisfaction of the first two requirements of the prima facie case (that the plaintiff engaged in protected activity and the employer knew of the exercise of the protected right) and argues that Plaintiff cannot succeed on either the third or fourth requirement.

Defendant successfully shows that Plaintiff is unable demonstrate that he experienced a materially adverse action. In the context of a retaliation claim, an action constitutes a "materially adverse action" if (and only if) it "produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Defendant asserts that Plaintiff is unable to show the requisite injury or harm, and it supports that assertion by showing with specific citations to the record that Plaintiff was never removed from his employment, his wages were never reduced, and he was never charged AWOL.[14] Defendant also successfully argues that Plaintiff's harm cannot be based on intangibles like a hindrance to Plaintiff's professional advancement (vis-à-vis Defendant's negative performance evaluations of Plaintiff) because Plaintiff cannot show that any of Defendant's actions would have been the cause of any failed professional advancement. Plaintiff cannot show this, Defendant argues, for the same reason that he received the poor performance

---

[14] Defendant argues that its Statement of Undisputed Facts should be taken as unopposed; the Court does not need to decide this issue because Defendant's Statement of Undisputed Facts is supported with citations to the record, which the Court incorporates by reference into any citation in the supplemental arguments. On the other hand, Plaintiff largely fails to cite to the record as discussed below and cannot create a genuine factual dispute via mere allegations.

evaluations: he actually performed poorly at his assigned work, thus causing his own professional failures. Defendant gave Plaintiff many opportunities in different positions to prove himself capable of maintaining employment, and yet—as Defendant details in its arguments—Plaintiff was unsuccessful in every position. (Doc. No. 124 at 6-7). *See Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 348 (6th Cir. 2008); *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 501 (6th Cir. 2008).

Plaintiff disputes some of the facts Defendant uses in support of its argument, purportedly with the support of a "timeline" that he says "will dispel defendant agency notion of their own narrative of what took place[]concerning the complaint before the court[.]" (Doc. No. 125 at 3). The Court believes that the "timeline" he is referencing here are chronologies in emails that he wrote and submitted to Susan Baumgartner at"OAWP" (Doc. No. 125-10 at 1-3) and "Jeff Elkin, an Attorney with the Investigation and Prosecution Division (IPD) of the U.S. Office of Special Counsel (OSC)" (Doc. No. 125-7 at 7-8), presumably in support of his whistleblower allegations. Though one of these emails (Doc. No. 125-10) references various exhibits, those exhibits do not appear to be in the attachment; moreover, both email timelines, which are themselves hearsay, consists in part of other hearsay statements (so-called hearsay within hearsay); therefore, the Court does not need to admit or consider this alleged proof. Additionally, Plaintiff makes no specific references to the timelines, to what evidence the timelines provide (or incorporates), or to which facts the timelines bring into dispute—let alone to how any identified factual disputes allow him to withstand summary judgment. Although pro se Plaintiffs are afforded greater leniency than represented parties, the Court can neither make arguments on behalf of a party (even if pro se) nor identify facts in the record to support a party's claims. This is particularly true in cases like this

one, where Plaintiff has repeatedly filed numerous, often lengthy, attachments with only vague, sweeping claims supporting their relevance.

Additionally, although Plaintiff's Supplemental Briefing listed four categories of adverse actions, he does not say which adverse action he is relying upon and how it supports his indirect-evidence theory of retaliation. He then states that "adverse actions are not limited to those actions which are economic or tangible," but fails to identify the type of intangible adverse action he has experienced. (Doc. No. 123 at 4). Plaintiff also states in his Supplemental Response that Defendant's actions "caused great emotional harm and pain to [him]." (Doc. No. 125 at 6). However, he does not cite to any evidence of this alleged harm or pain. Accordingly, Defendant has shown initially that Plaintiff cannot demonstrate a materially adverse action that produced an injury or harm, and Plaintiff in response has failed to demonstrate that there is any evidence to create a genuine issue of material fact that he was in fact injured or harmed in any way— including in ways that are "intangible."

Alternatively, Defendant also successfully shows that Plaintiff is unable to prove the fourth requirement, but-for causation, because (1) his retaliation claim is based at least in part on actions that occurred before his protected activity and therefore cannot possibly be the but-for cause of the alleged retaliation and (2) Plaintiff's theory is that he undertook protected activities in response to Defendant taking adverse actions against him, not that Defendant took adverse actions in response to Plaintiff undertaking a protected activity. (*See* Doc. No. 124 at 11). Defendant also points out that Plaintiff does not have any evidence of retaliatory motive. As Defendant had indicated, all of the evidence before the Court indicates that Defendant's actions were prompted by Plaintiff's poor work performance. Plaintiff's response has provided no evidence of retaliatory motive. In a case like this, where retaliation cannot be directly inferred from the timing of the protected activity vis-

à-vis the alleged adverse action(s), other evidence of retaliatory motive is necessary for the plaintiff to succeed. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.")

As with the third element, Plaintiff fails to cite to any specific evidence on the record to support the fourth element. Instead, he merely makes bare allegations and recites his version of the facts, which (as noted above) are insufficient on motion for summary judgment to create a genuine dispute of material fact. Even so, Plaintiff argues that the protected activity occurred *before* the alleged retaliatory action because, prior to such action, Plaintiff disclosed Defendant's "misdeeds" to "several people" including "[a]n employee, a Priest, a physician and a person outside the agency." (Doc. No. 125 at 3). Even taking this as true, it is not clear how informing any of these individuals would suffice to impute knowledge to *Defendant* of such alleged protected activity such that *Defendant* would have a motive to retaliate based on such protected conduct. As for Plaintiff allegedly informing an unnamed employee of an unnamed employer, even if the Court were to make the shaky assumption that the employee is employed by Defendant, that employee has an unknown rank, authority, and responsibilities; thus, the Court has no basis to impute *to Defendant* the information supposedly conveyed to this employee. Plaintiff therefore cannot meet his burden and demonstrate the fourth element of his indirect evidence prima facie case, as required to avoid summary judgment here in the absence of direct evidence of retaliation.

Accordingly, summary judgment is granted to Defendant and against Plaintiff on the remaining (retaliation) claim.

CONCLUSION

For the reasons set forth herein, the Motions for Review (Doc. Nos. 115, 119) are **DENIED**, the R&R (Doc. No. 121) is **ADOPTED**.[15] Consistent with the adoption of the R&R Defendant's Summary Judgment Motion (Doc. No. 100) is **GRANTED** as to Plaintiff's THRA claim and Plaintiff's Title VII and ADEA claims of discrimination. The referral to the magistrate judge is **REVOKED** with respect to the summary judgment claim still pending after the adoption of the R&R, namely the Title VII and ADEA retaliation claim—and having considered on the merits the arguments as to that claim, the Court **GRANTS** the Summary Judgment Motion (Doc. No. 100) as to the retaliation claim. Having done so, the Court has granted Defendant's Summary Judgment Motion in its entirety.

The Clerk of the Court is **DIRECTED** to enter final judgment under Federal Rule of Civil Procedure 58 and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[15] The Court notes that the R&R contains a scrivener's error on the third line of its third page. Specifically, the phrase "did to go smoothly," (Doc. No. 121 at 3), clearly was meant to be "did not go smoothly." The Court also notes that the copy of the R&R accessible via PACER reflects some extraneous markings that seem likely to be the anomalous result of the electronic processing of the document.